UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 3:00CR69(AHN) |
| | : | CIV. NO. 3:04CV1383(AHN) |
| | : | |
| v. | : | |
| | : | February 15, 2004 |
| | : | |
| CLINTON COX | : | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S PRO SE "NOTICE OF JUDICIAL COGNIZANCE"

By pro se pleading entitled "Notice of Judicial Cognizance" ("Notice") filed February 8, 2005, Clinton Cox (the "defendant") informed the Court of the recent decision by the United States Supreme Court in United States v. Booker, 125 S. Ct. 738 (2005). Because Booker does not apply on collateral review, the defendant's amended petition should be summarily dismissed and his request for release denied. Even if Booker applied here, the defendant still would be subject to a thirty-five year term of imprisonment as a result of the statutory mandatory minimums applicable here. Consequently, the defendant's requested relief of immediate release is not available.

## I.  Procedural History

On April 4, 2001, a grand jury sitting in Bridgeport, Connecticut returned a multi-count indictment against the defendant and Jason Cox (collectively "the defendants") and Willie Grant ("Grant") charging various violations of the federal narcotics and firearms laws.  (See Gov't Ex. 1 (copy of District

Court docket sheet)).[1]

On August 1, 2001, the grand jury returned a Superseding Indictment against the defendants. (See Gov't Ex. 2 (copy of Superseding Indictment)). The Superseding Indictment deleted Grant from among the named defendants and alleged that the defendants violated various federal narcotics and firearm laws.

On August 28, 2000, the Government filed notice pursuant to 21 U.S.C. § 851 of its intent to seek enhanced sentencing penalties against the defendants based on their prior felony drug convictions. (See Gov't Ex. 1.)

Between January 16, 2001 and January 23, 2001, the Court held trial. (See Gov't Ex. 1.) On January 23, 2001, the jury returned guilty verdicts against the defendants on each of the remaining counts of the Superseding Indictment. (See Gov't Ex. 1.) The defendant was convicted of one count of conspiring to possess with the intent to distribute fifty grams or more of cocaine base in violation of 21 U.S.C. §§ 846 and 841(a)(1)(Count One), three counts of possessing with the intent to distribute and distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) (Counts Four, Seven, and Ten), and three counts of using and carrying a firearm during and in relation to a drug

---

[1] Because of their volume, the Government has not attached the exhibits identified in this memorandum. The exhibits are attached to the Government's memorandum dated October 18, 2004. The Government respectfully requests that the Court incorporate those exhibits into this memorandum.

trafficking crime in violation of 18 U.S.C. § 924(c) (Counts
Five, Eight, and Eleven).

The Presentence Investigation Report ("PSR") calculated the
defendant's Sentencing Guideline range to be 540 months to life
imprisonment. <u>See</u> Clinton Cox PSR ¶¶ 48, 55, 90, 91.

The PSR calculated the defendant's offense level as follows:

Base offense level (U.S.S.G. § 2D1.1(a)(3)(1))  . . . . . .    38

Adjustment for role in offense (§ 3B1.1)  . . . . . . . . .    +4

Total Offense Level . . . . . . . . . . . . . . . . . . . .    42

It also calculated that the defendant possessed eight
criminal history points, corresponding to Criminal History
Category IV. <u>See</u> PSR ¶ 55.

The PSR also noted that the defendant's convictions for
possession of firearms in connection with his drug offenses
pursuant to 18 U.S.C. § 924(c) required imposition of consecutive
5-year terms for each count of conviction.  This translated to
fifteen additional years of imprisonment for the defendant.  <u>See</u>
PSR ¶ 39.

On September 12, 2001, the Court sentenced the defendant to
a term of imprisonment of 540 months.

On March 19, 2003, the Court of Appeals for the Second
Circuit affirmed the defendant's conviction.  <u>See</u> <u>United States</u>
<u>v. Cox</u>, 324 F.3d 77 (2d Cir. 2003)  On October 6, 2003, the
Supreme Court denied the defendant's petition for a writ of

3

certiori.  See United States v. Cox, 124 S. Ct. 143 (2003).

On approximately January 20, 2004, the defendant forwarded to the Clerk of the Court a motion pursuant to Fed. R. Crim. P. 33 requesting a new trial on Count Eight of the Superseding Indictment, which alleged that he violated 18 U.S.C. § 924(c) on March 19, 1999.  That motion is still pending.

On approximately August 9, 2004, the defendant forwarded to the Clerk of the Court a petition pursuant to 28 U.S.C. § 2255. In his petition, the defendant asserted three principal grounds in support of his motion.  First, he alleged that Lawrence Hopkins, Esq., his trial counsel, provided ineffective assistance of counsel by failing to request an audibility hearing of a recording of a conversation on February 10, 2000 between Jason Cox, the defendant's brother, and a Government cooperator and by failing to seek to redact that portion of the recording referring to the defendant.  Second, the defendant alleged that Blakely v. Washington required that the district court vacate his sentence. Third, the defendant argued that Count One of the Superseding Indictment was fatally defective because it did not alleged that he "willfully" entered the narcotics conspiracy charged.

On October 18, 2004, the Government filed a memorandum addressing each claim and requesting that the Court dismiss the defendant's petition.

II.    **The Defendant's Amended Petition Should Be Dismissed**

Booker does not apply to collateral challenges to a
defendant's sentence.  Even if it did, the defendant here still
would be subject a statutorily required mandatory minimum term of
imprisonment of thirty-five years as a result of the jury's
verdict.

A.    **Booker Does Not Apply To Collateral Challenges**

In Booker, the Supreme Court held that the United States
Sentencing Guidelines violated the Sixth Amendment principles
articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004), and
determined that a mandatory system in which a sentence is
increased based on factual findings by a judge violates the right
to trial by jury.   The principle adopted in Booker, like the
principle adopted in Blakely, constitutes a "new constitutional
rule of criminal procedure" which, under Teague v. Lane, 489 U.S.
288 (1989), is not retroactively applicable to cases, such as the
defendant's case, that became final before the decision was
announced.

In McReynolds v. United States, 2005 WL 237642 (7th  Cir.
Feb. 2, 2005), the Seventh Circuit held that "Booker does not
apply retroactively to criminal cases that became final before
its release on January 12, 2005. . . . Booker itself represents
the establishment of a new rule about the federal system.
Petitioners' convictions and sentences became final well before

<u>Booker</u> was issued, and its approach therefore does not govern these collateral proceedings."  <u>Id</u>. at *5; <u>see</u> <u>Warren v. United States</u>, 2005 WL 165385, at *9-10 (D. Conn. Jan. 25, 2005) (Thompson, J.) (<u>Apprendi</u>, <u>Blakely</u> and <u>Booker</u> do not "afford[] relief" to the petitioner on collateral attack); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>United States v. Russell</u>, 2005 WL 281183 (E.D. Pa. Feb. 3, 2005)(<u>Booker</u> not retroactive); <u>Tuttamore v. United States</u>, 2005 WL 234368 (N.D. Ohio Feb. 1, 2005) ("To the extent that petitioner relies on <u>Booker</u>, he cannot so prevail, because the decision in <u>Booker</u> is not retroactive for purposes of § 2255 collateral attacks."); <u>Gerrish v. United States</u>, 2005 WL 159642 (D. Me. Jan. 25, 2005)(same); <u>cf</u>. <u>Green v. United States</u>, 2005 WL 237204 (2d Cir. Feb. 2, 2005)(motion to file second or successive application on the basis of <u>Booker</u> denied since Supreme Court has not explicitly made <u>Booker</u> or <u>Blakely</u> retroactive on collateral attack); <u>In re Anderson</u>, 2005 WL 123923 (11th Cir. Jan 21, 2005) ("because <u>Booker</u>, like <u>Blakely</u> and <u>Ring</u>, is based on an extension of <u>Apprendi</u>, defendant cannot show that the Supreme Court has made that decision retroactive to cases already final on direct review.");  <u>Hamlin v. United States</u>, 2005 WL 102959 (D. Me. Jan. 19, 2005)(same).

This Court should follow the Seventh Circuit's reasoning in <u>McReynolds</u> and of the other courts which have found <u>Booker</u> unavailable on collateral attack.  <u>McReynolds</u> relied on <u>Schriro</u>

v. Summerlin, 124 S. Ct. 2519 (2004), a case in which the Supreme
Court considered whether Ring v. Arizona, 536 U.S. 584 (2002),
applied retroactively to cases that had already become final when
Ring was decided.  Ring held that, because Arizona law authorized
the death penalty only if an aggravating factor was present,
Apprendi required the existence of such a factor to be proved to
a jury rather than to a judge.  Summerlin's conviction and death
sentence, which was imposed under the same Arizona law that was
at issue in Ring, became final long before Ring was decided.

The Supreme Court held that "Ring announced a new procedural
rule that does not apply retroactively to cases already final on
direct review."  Ring, 124 S. Ct. at 2526.  The Court explained
that a "new rule" resulting from one of its decisions applies to
convictions that are already final only in limited circumstances.
New *substantive* rules generally apply retroactively, but new
*procedural* rules generally do not – only "watershed rules of
criminal procedure implicating the fundamental fairness and
accuracy of the criminal proceeding" are given retroactive
effect.  Id. at 2523 (internal quotation marks omitted).  The
Court concluded that Ring's holding was properly classified as
procedural, rather than substantive, because it did not alter the
range of conduct or the class of persons subject to the death
penalty in Arizona; instead, it merely changed the method of
determining whether the defendant engaged in that conduct.  See

7

id. at 2523-24.  The Court also held that Ring did not fall within Teague's narrow exception for "watershed rules" of criminal procedure.  The Court explained that, to qualify as a watershed rule, a new procedural rule must be one "without which the likelihood of an accurate conviction is *seriously* diminished."  See id. at 2523 (quoting Teague, 489 U.S. at 313) (emphasis added in Summerlin).  The Court held that Ring did not announce a watershed rule of criminal procedure because it could not confidently say that judicial fact finding seriously diminished the accuracy of capital sentencing proceedings.  Id. at 2424-25.

Consistent with the reasoning of Summerlin, the Second Circuit has held, like every other Court of Appeals to have considered the issue, that Apprendi is not a procedural rule that falls within the "watershed rile" exception and thus is not retroactively applicable to cases on collateral review. See Coleman v. United States, 329 F.3d 77 (2d Cir.), cert. denied, 124 S. Ct. 840 (2003).[2]  Importantly, the Second Circuit in

_____

[2] Accord Sepulveda v. United States, 330 F.3d 55 (1st Cir. 2003); United States v. Swinton, 333 F.3d 481 (3d Cir.), cert. denied, 124 S. Ct. 458 (2003); United States v. Sanders, 247 F.3d 139 (4th Cir. 2001); United States v. Brown, 305 F.3d 304 (5th Cir. 2002), cert. denied, 538 U.S. 1007 (2003); Goode v. United States, 305 F.3d 378 (6th Cir. 2002); Curtis v. United States, 294 F.3d 841 (7th Cir. 2002); United States v. Moss, 252 F.3d 993 (8th Cir. 2001); United States v. Sanchez-Cervantes, 282 F.3d 664 (9th Cir. 2002); United States v. Mora, 293 F.3d 1213 (10th Cir. 2002); McCoy v. United States, 266 F.3d 1245 (11th Cir. 2001).

Coleman held that Apprendi was not a watershed rule despite the difference between using the jury and the judge as factfinder and despite the difference in the relevant burdens of proof, that is a preponderance-of-the-evidence standard versus a beyond-a-reasonable-doubt standard.

In Coleman, the Second Circuit noted that, in order to constitute a "watershed" rule of criminal procedure, "a rule must not only improve the accuracy of criminal proceedings, but also alter our understanding of the bedrock procedural elements essential to the fairness of those proceedings. In short, it must be a groundbreaking occurrence."  Coleman, 329 F.3d at 88 (internal quotation marks, alterations, and citations omitted). "Apprendi did not cut a new rule from whole cloth. It merely clarified and extended the scope of two well-settled principles of criminal procedure: the defendant's right to a jury trial and the government's burden of proof beyond a reasonable doubt."  Id. at 89 (internal quotation marks omitted).  The Colman Court's is firmly grounded in earlier decisions of the Supreme Court and the Second Circuit holding that Apprendi errors may be reviewed for harmlessness, not structural error – a conclusion that would have stood in tremendous tension with a determination that Apprendi announced a watershed rule, see id. at 89-90 – that is, one of the "small core of rules requiring the observance of those procedures that . . . are implicit in the concept of ordered liberty."  Id. at 88 (internal quotation marks and citations

9

omitted).

Coleman involved a determination that a change in the identity of the relevant fact-finder *and* an increase in the burden of proof were insufficient to constitute a "watershed" rule of criminal procedure.  Because Booker did not entail either of those changes – but instead maintained the identity of the fact-finder at sentencing as well as the preponderance of the evidence standard – it follows, *a fortiori*, that Booker's rule falls short of being a "watershed" rule.  Indeed, as the Second Circuit recently posited in United States v. Crosby, 2005 WL 240916 (2d Cir. Feb. 2, 2005), the district court might very well have imposed the same sentence regardless of whether the Guidelines were binding (as before Booker) or advisory (after Booker), and that district judges might impose higher *or* lower sentences in Booker's wake.   In short, Booker's holding simply does not shift the foundations of American constitutional law and hence does not apply retroactively on collateral attack.

Booker entailed an extension of the procedural rule announced in Apprendi that factual findings that increase the maximum penalty permitted by law must be found by a jury beyond a reasonable doubt. The Supreme Court has defined a "new rule" under Teague as one that was not "'*dictated* by precedent existing at the time the defendant's conviction became final.'"  Graham v. Collins, 506 U.S. at 467 (quoting Teague, 489 U.S. at 301

(emphasis in <u>Teague</u>)); <u>see</u> <u>Sawyer v. Smith</u>, 497 U.S. 227, 234 (1990).  Subsequent decisions have made clear that a rule may be "new" despite the fact that earlier cases supported it, <u>Sawyer</u>, 497 U.S. at 236, "or even control or govern" it, <u>Saffle v. Parks</u>, 494 U.S. 484, 491 (1990).  Under that definition, <u>Booker</u> announced a new rule for <u>Teague</u> purposes.

Moreover, while not directly addressing the retroactivity of its extension of <u>Blakely</u> to the Sentencing Guidelines and its holding that those Guidelines would be advisory, the "merits majority" of <u>Booker</u> clarified that its holding on the merits and the remedy of the Sixth Amendment claim was to apply "to all cases on direct review." 2005 WL 50108 at *29 (citing <u>Griffith v. Kentucky</u>, 479 U.S. 314, 328 (1987): "[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past."). This statement has already been read by one court, in the context of a successive petition, as limiting the application of the rule to cases in the direct review pipeline especially in view of the fact that the Supreme Court has already concluded that <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), a case which applied the principle of <u>Apprendi</u> to death sentences imposed on the basis of aggravating factors, was not to be applied retroactively to cases once they were final on direct review. <u>See</u> <u>Hamlin v. United States</u>, 2005 WL 102959 at *1 (citing

<u>Schriro v. Summerlin</u>, 124 S. Ct. at 2519, 2526 (2004)("<u>Ring</u> announced a new procedural rule that does not apply retroactively to cases already final on direct review.")); <u>see also</u> <u>Stevens v. United States</u>, 2005 WL 102958 (D. Me. Jan 18, 2005).

In short, <u>Booker</u>, which represents an extension of <u>Apprendi</u>, does not apply on collateral review.

**B.    Even If <u>Booker</u> Applied Here, The Defendant Still Would Be Subject To A Thirty-five Year Term Of Imprisonment**

In <u>Booker</u>, the Supreme Court confirmed that no violation of a defendant's Sixth Amendment rights exists if he was sentenced within the applicable maximum sentence established by the facts found by a jury or admitted by the defendant. <u>See</u> <u>Booker</u>, 125 S. Ct. at 750.  <u>See also</u> <u>United States v. Harris</u>, 536 U.S. 545, 557 (2002)(no violation of the defendant's Sixth Amendment rights exists where the defendant is sentenced to the mandatory minimum sentence based upon judicial fact finding, so long as that minimum does not exceed the otherwise applicable maximum sentence)

Here, a jury found beyond a reasonable doubt that the defendant conspired to possess with the intent to distribute and to distribute at least 50 grams of cocaine base.  Combined with the Government's filing of a notice pursuant to 21 U.S.C. § 851, the jury's finding as to the quantity and type of controlled substances established a maximum penalty of life imprisonment and

a mandatory minimum penalty of twenty years of imprisonment.  <u>See</u> 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(iii).  Further, the jury found beyond a reasonable doubt that the defendant violated 18 U.S.C. § 924(c) on three occasions.  The jury's verdict on those counts established a maximum penalty of life and a mandatory minimum penalty of five years imprisonment on each count.

In short, the defendant's conviction by jury on the narcotics and firearms counts resulted in a statutorily required mandatory minimum term of imprisonment of thirty-five years.  Consequently, the defendant is not legally entitled to immediate release.

Even if <u>Harris</u> were overruled and the principles established in <u>Booker</u> extended to mandatory minimum penalties, the defendant's conviction by a jury that found beyond a reasonable doubt the facts triggering the applicable mandatory minimum terms of imprisonment satisfies any arguable Sixth Amendment requirements.  Indeed, even after <u>Booker</u>, the defendant could not be sentenced to any term lower than the combined statutorily required mandatory minimum penalty of thirty-five years.

## III. <u>Conclusion</u>

For the reasons stated in this and the Government's earlier response, the Government respectfully requests that petitioner's section 2255 petition seeking to vacate his sentence should be

summarily denied without a hearing.

                          Respectfully submitted,

                          KEVIN J. O'CONNOR
                          UNITED STATES ATTORNEY

                          JAMES J. FINNERTY
                          ASSISTANT UNITED STATES ATTORNEY
                          United States Attorney's Office
                          United States Courthouse
                          915 Lafayette Boulevard
                          Bridgeport, CT 06604
                          Tel: (203) 696-3000
                          Federal Bar No. CT15203

                    <u>CERTIFICATION OF SERVICE</u>

        This is to certify that a copy of the foregoing has been
mailed via First Class Mail, postage prepaid, on February 15,
2004 to:

Clinton D. Cox
Inmate No. 13883-014
USP Lewisburg
P.O. Box 1000
Lewisburg, PA 17837


                          _____
                          JAMES J. FINNERTY
                          ASSISTANT UNITED STATES ATTORNEY