```
                  UNITED STATES COURT OF APPEALS
                      FOR THE SECOND CIRCUIT


                         August Term, 2004

 (Argued: October 19, 2004          Decided: April 8, 2005)

                        Docket No. 03-2446-pr



     _____

 MIGUEL GUZMAN,

          Petitioner-Appellant,

          -v.-

 UNITED STATES OF AMERICA,

          Respondent-Appellee.


     _____

 Before:   JACOBS, SOTOMAYOR, and HALL, Circuit Judges.

     Petitioner appeals from the denial of

postconviction relief by the United States District

Court for the Southern District of New York

(Scheindlin, J.).  We previously affirmed the

judgment of the district court, but held the mandate

pending the Supreme Court's decision in United States

v. Booker, ___ U.S. ___, 125 S. Ct. 738 (2005).  We

now hold that Booker does not apply retroactively to

cases on collateral review.  AFFIRMED.
```

```
                              RUTH M. LIEBESMAN, New
                              York, NY, for Appellant.

                              DANIEL L. STEIN,
                              Assistant United States
                              Attorney, Southern
                              District of New York, New
                              York, NY (DAVID N.
                              KELLEY, United States
                              Attorney, and ROBIN L.
                              BAKER and LAURA
                              GROSSFIELD BIRGER,
                              Assistant United States
                              Attorneys, on the
                              briefs), for Appellee.
```

DENNIS JACOBS, Circuit Judge:

Petitioner Miguel Guzman appeals from the denial of postconviction relief by the United States District Court for the Southern District of New York (Scheindlin, J.). We previously affirmed the judgment of the district court, but held the mandate pending the Supreme Court's decision in United States v. Booker, ___ U.S. ___, 125 S. Ct. 738 (2005). We now hold that Booker does not apply retroactively to cases on collateral review, and therefore affirm.

**BACKGROUND**

Guzman was convicted in 1998 on numerous racketeering and drug-trafficking counts and

1  sentenced to six life terms plus 145 years; the life
2  terms were imposed pursuant to the Federal Sentencing
3  Guidelines, and were based in part on factual
4  findings made by the district judge.  On March 23,
5  2001, this Court affirmed the judgment, and on
6  October 1, 2001, the Supreme Court denied certiorari,
7  rendering Guzman's conviction final.  See Beard v.
8  Banks, ___ U.S. ___, ___, 124 S. Ct. 2504, 2510
9  (2004).
10  Guzman subsequently filed a motion pursuant to 28
11  U.S.C. § 2255 collaterally attacking his sentence,
12  and was denied relief in an order entered by Judge
13  Scheindlin on June 20, 2003.  We affirmed by order
14  dated October 25, 2004, but held the mandate pending
15  the Supreme Court's decision in United States v.
16  Booker.  Guzman v. United States, 112 Fed. Appx. 766,
17  2004 WL 2378810 (2d Cir. Oct. 25, 2004).  After
18  Booker was issued, we solicited briefing on the
19  applicability of Booker to Guzman's appeal.
20  We now expand the certificate of appealability
21  ("COA") to include the issues raised by Booker.  See
22  28 U.S.C. § 2253(c)(2) (COA "may issue . . . if the

```
 1   applicant has made a substantial showing of the
 2   denial of a constitutional right"); Slack v.
 3   McDaniel, 529 U.S. 473, 483-84 (2000) (under §
 4   2253(c)(2), COA appropriate where, inter alia,
 5   reasonable jurists could debate the proper resolution
 6   of the issue); see also Green v. Mazzucca, 377 F.3d
 7   182, 183 (2d Cir. 2004) (per curiam) (observing that
 8   this Court can "expand a petitioner's COA when
 9   appropriate").  For the following reasons, we hold
10   that Booker is not retroactive: it does not apply to
11   cases on collateral review where the defendant's
12   conviction was final as of January 12, 2005, the date
13   that Booker issued.
14
15                         DISCUSSION
16       Booker [i] held that the Guidelines violated the
17   Sixth Amendment to the extent that they allowed the
18   maximum sentence authorized by a guilty plea or a
19   verdict to be increased based on findings of fact
20   (other than the fact of a prior conviction) made by
21   the judge, 125 S. Ct. at 755-56; [ii] held that the
22   remedy was to make the Guidelines advisory, id. at
```

756-57; and [iii] expressly made these holdings applicable to all cases pending on direct review, id. at 769. But Booker "made no explicit statement of retroactivity to collateral cases." Green v. United States, 397 F.3d 101, 103 (2d Cir. 2005) (*per curiam*).

The several courts of appeals that have considered the retroactivity question have held that Booker is not retroactive. See Humphress v. United States, 398 F.3d 855, 860 (6th Cir. 2005); McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005); United States v. Price, 400 F.3d 844, 845 (10th Cir. 2005); Varela v. United States, 400 F.3d 864, 868 (11th Cir. 2005) (*per curiam*); see also Hamdani v. United States, No. Civ. A. 04-3332(DGT), ___ F. Supp. 2d ___, 2005 WL 419727, at *2 (E.D.N.Y. Feb. 22, 2005) (Trager, J.). We agree.

Under the analysis set forth in Teague v. Lane, 489 U.S. 288 (1989) (plurality opinion), and as later developed, a new rule of constitutional law does not apply retroactively to cases on collateral review unless the rule is substantive or a "watershed" rule

of procedure that affects "the fundamental fairness and accuracy of the criminal proceeding." Schriro v. Summerlin, ___ U.S. ___, 124 S. Ct. 2519, 2522-23 (2004) (quotation omitted).

A. *Booker* Established a New Rule

"[A] case announces a new rule if the result was not *dictated* by precedent . . . ." Teague, 489 U.S. at 301. Precedent "dictates" the result in a subsequent case where that result would be "'apparent to *all reasonable jurists.*'" Banks, 124 S. Ct. at 2511 (quoting Lambrix v. Singletary, 520 U.S. 518, 528 (1997)) (emphasis added). Guzman argues that the result in Booker was compelled by Apprendi v. New Jersey, 530 U.S. 466 (2000), which had held that any fact (other than the fact of a prior conviction) that triggers a sentence in excess of the prescribed statutory maximum must be proved to a jury beyond a reasonable doubt. If Booker were simply Apprendi again, we would not need to determine the retroactivity of Booker under Teague: since Guzman's conviction was not final when Apprendi issued, Guzman

1   would be afforded any relief he could get under
2   Booker.
3        However, the result in Booker was not dictated by
4   Apprendi or, for that matter, the Court's later
5   decision in Blakely v. Washington, ___ U.S. ___, 124
6   S. Ct. 2531 (2004) (striking down part of Washington
7   State's sentencing scheme under Apprendi).  It cannot
8   be said that the result in Booker was apparent to
9   "all reasonable jurists"; in Booker itself,
10  dissenters undertook to explain why the holding in
11  Booker was not compelled by Apprendi or Blakely.  See
12  Booker, 125 S. Ct. at 805-07 (Breyer, J., joined by
13  Rehnquist, C.J., and O'Connor & Kennedy, JJ.,
14  dissenting in part) (arguing that "[l]egal logic" did
15  not require the extension of Apprendi and Blakely to
16  the Guidelines "for there are key differences").
17  Moreover, "[t]hat the federal judiciary [was] deeply
18  divided on the issue of whether the rule announced in
19  Blakely applie[d] to the Federal Guidelines lends
20  further support to the conclusion that Booker
21  announced a new rule." Humphress, 398 F.3d at 861
22  (citing cases).  Since Booker announced a new rule,

1   we must decide whether either of the <u>Teague</u>
2   exceptions to nonretroactivity applies.
3
4       B.   <u>Booker</u> Did Not Establish a Substantive Rule
5           Generally, substantive rules "narrow the scope of
6   a criminal statute by interpreting its terms" or
7   "place particular conduct or persons covered by [a
8   criminal] statute beyond the State's power to
9   punish." <u>Summerlin</u>, 124 S. Ct. at 2522. Such rules
10  "apply retroactively because they necessarily carry a
11  significant risk that a defendant stands convicted of
12  an act that the law does not make criminal or faces a
13  punishment that the law cannot impose upon him." <u>Id.</u>
14  at 2522-23 (quotation omitted).
15          In <u>Summerlin</u>, the Court was faced with whether a
16  substantive rule was established by <u>Ring v. Arizona</u>,
17  536 U.S. 584 (2002), which held that "a sentencing
18  judge, sitting without a jury, [may not] find an
19  aggravating circumstance necessary for imposition of
20  the death penalty," <u>id.</u> at 609. The Court reasoned
21  that because <u>Ring</u> did not "alter the range of conduct
22  . . . subjected to the death penalty," but merely

"altered the range of permissible methods for determining whether a defendant's conduct is punishable by death, requiring that a jury rather than a judge find the essential facts bearing on punishment," the rule was a "prototypical procedural rule[.]" Summerlin, 124 S. Ct. at 2523. Likewise, Booker did not alter the range of conduct subject to any sentence. See McReynolds, 397 F.3d at 481 ("No conduct that was forbidden before Booker is permitted today; no maximum available sentence has been reduced."); see also Coleman, 329 F.3d at 87 (holding that Apprendi established a procedural rule because "[t]he substance of the crime remains the same; only the trier of fact and the standard of proof have changed"). In short, Booker did not establish a substantive rule.

C.  *Booker Did Not Establish a Watershed Rule of Procedure*

A new procedural rule applies retroactively only if it is a watershed rule "implicating the fundamental fairness and accuracy of the criminal proceeding." Summerlin, 124 S. Ct. at 2523

1  (quotation omitted). Such a rule "must be one
2  'without which the likelihood of an accurate
3  conviction is seriously diminished.'" Id. (quoting
4  Teague, 489 U.S. at 313). This "class of rules is
5  extremely narrow." Id. No such watershed rule has
6  been identified by the Court since that standard was
7  adopted. See Coleman, 329 F.3d at 89. The Court has
8  pointed to Gideon v. Wainright, 372 U.S. 335 (1963)
9  (establishing defendants' right to counsel in
10 criminal trials for serious crimes), to illustrate
11 the type of case that would fit this exception. See
12 Saffle v. Parks, 494 U.S. 484, 495 (1990).
13      Booker did not establish a watershed rule because
14 "the only change [is] the degree of flexibility
15 judges . . . enjoy in applying the guideline system."
16 McReynolds, 397 F.3d at 481; see also Coleman, 329
17 F.3d at 89 (holding that Apprendi did not announce a
18 watershed rule, in part because it did not implicate
19 "bedrock procedural elements" essential to
20 fundamental fairness, "[a]lthough [it] altered
21 certain aspects of indictments, trials, and
22 sentencing proceedings").
23      In Summerlin, the Court held that Ring did not

-10-

establish a watershed rule because it was

> implausible that judicial factfinding so
> seriously diminishes accuracy as to produce
> an impermissibly large risk of injustice.
> When so many presumably reasonable minds
> continue to disagree over whether juries are
> better factfinders at all, we cannot
> confidently say that judicial factfinding
> seriously diminishes accuracy.

124 S. Ct. at 2525 (quotation and emphasis omitted). That reasoning applies here *a fortiori*. The procedural defect identified in Booker is that sentence-enhancing factors were found by judges rather than by juries, and by a preponderance rather than beyond a reasonable doubt; but the remedy--to render the Guidelines advisory--vested greater discretion in judges, not less. See McReynolds, 397 F.3d at 481 ("The remedial portion of Booker held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the Sixth Amendment so long as the guideline system has some flexibility in application.").

Finally, the chief goal of the mandatory Guidelines project was to *reduce* the "disparity and inherent unfairness" caused by discretionary

1   sentencing.  Kenneth R. Feinberg, <u>Federal Criminal</u>
2   <u>Sentencing Reform: Congress and the United States</u>
3   <u>Sentencing Commission</u>, 28 Wake Forest L. Rev. 291,
4   294-96 (1993); <u>accord</u> <u>Booker</u>, 125 S. Ct. at 783-86 &
5   n.14 (Stevens, <u>J.</u>, joined by Souter, <u>J.</u>, dissenting
6   in part); Stephen Breyer, <u>Federal Sentencing</u>
7   <u>Guidelines Revisited</u>, 11 Fed. Sent. Rep. 180 (1999),
8   <u>available at</u> 1999 WL 730985, at *1 ("The Guidelines
9   sought greater fairness and honesty in sentencing.
10  In seeking 'greater fairness,' Congress, acting in
11  bipartisan fashion, intended to respond to complaints
12  of unreasonable disparity in sentencing--that is,
13  complaints that differences among sentences reflected
14  not simply different offense conduct or different
15  offender history, but the fact that different judges
16  imposed the sentences.").  We cannot say that the
17  Guidelines actually advanced that goal, and mitigated
18  unwarranted disparity and unfairness.  By the same
19  token, we cannot assume that the mandatory Guidelines
20  system under which Guzman was sentenced seriously
21  diminished the accuracy or fundamental fairness of
22  the sentencing process.  In sum, the rule established
23  by <u>Booker</u> "has none of the primacy and centrality of

1  the rule adopted in <u>Gideon</u> or other rules which may
2  be thought to be within the exception." <u>Saffle</u>, 494
3  U.S. at 495.

## CONCLUSION

For the reasons stated above, <u>Booker</u> is not retroactive, <u>i.e.</u>, it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that <u>Booker</u> issued. The judgment of the district court is AFFIRMED. The Clerk is directed to issue the mandate forthwith.