```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

CLINTON COX,                      :
       Petitioner,                :
                                  :    Crim. No. 3:00cr69 (AHN)
v.                                :    Civ. No. 3:04cv1383 (AHN)
                                  :
UNITED STATES OF AMERICA,         :
       Respondent.                :
```

RULING ON PENDING MOTIONS

On January 23, 2001, a jury convicted petitioner Clinton Cox ("Cox") of numerous federal drug-trafficking charges under 21 U.S.C. § 846 and firearms charges under 18 U.S.C. § 924. The court sentenced Cox to 540-months imprisonment. Now pending before the court are Cox's petition for a writ of habeas corpus [doc # 212] pursuant to 28 U.S.C. § 2255 and his motion to stay or hold the petition in abeyance [doc # 244] until the Supreme Court decides whether Blakely v. Washington, 542 U.S. 296 (2004), or United States v. Booker, 543 U.S. 220 (2005), applies retroactively. The court concludes that because the Second Circuit has squarely addressed the retroactivity of Booker, no further delay in the resolution of Cox's § 2255 petition is warranted, and the motion for a stay [doc # 244] is thus DENIED. Further, because Cox cannot avail himself of the rule in Booker, and his claim of ineffective assistance of counsel is without merit, his petition for a writ of habeas corpus [doc # 212] is also DENIED.

## BACKGROUND

Cox and his brother Jason Cox began selling crack cocaine in Bridgeport, Connecticut in 1995.  By 1999, they were dealing crack cocaine throughout the Bridgeport area and as far away as South Carolina.  Other individuals, often crack addicts, were recruited to help them purchase cocaine and guns, process cocaine into crack, rent and drive cars, and make sales.  On several occasions in the period from April to June 1998, undercover Connecticut police officers paged Jason Cox to arrange delivery of crack.  Several of these transactions were recorded on audio and videotapes.  On February 9, 2000, Thomas Marazita ("Marazita") bought $50 worth of crack from Jason Cox in a controlled purchase.  The police also recorded a February 10, 2000 phone conversation in which Jason Cox told Marazita to purchase crack from Cox's co-defendant, Willie Grant ("Grant").

On August 1, 2000, a grand jury sitting in Bridgeport returned an indictment against Cox, alleging that he violated various federal narcotics and firearms statutes.  He pleaded not guilty and proceeded to trial, and on January 23, 2001, a jury convicted him of three counts of possessing with intent to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1); one count of conspiracy to engage in that drug-trafficking; and three counts of using and carrying a firearm during and in relation to a drug-trafficking crime, in

violation of 18 U.S.C. § 924(c).

The court sentenced Cox to 360-months imprisonment for the drug-trafficking and conspiracy counts, and imposed a further 60-months imprisonment for each of the three firearms counts, in accordance with the mandatory minimum prescribed by 18 U.S.C. § 924(c)(1)(a)(i).  The court ordered the terms to be served consecutively, for a total of 540-months imprisonment.

Cox appealed his conviction, arguing that the district court (1) mishandled an allegation of juror misconduct; (2) miscalculated the amount of crack cocaine attributable to him; and (3) sentenced him to supervised release in excess of the statutory maximum.  See United States v. Cox ("Cox I"), 324 F.3d 77 (2d Cir. 2003); United States v. Cox ("Cox II"), 59 Fed. Appx. 437 (2d Cir. 2003).  He also argued that he received ineffective assistance of counsel because his trial counsel did not seek to suppress evidence of the drugs seized from him on October 9, 1999.  See Cox II, 59 Fed. Appx. at 439.  The Second Circuit rejected each of these arguments and affirmed Cox's conviction and sentencing.  See Cox I, 324 F.3d at 78; Cox II, 59 Fed. Appx. at 438.

## DISCUSSION

Cox challenges his conviction on the grounds that his counsel made various errors at trial, and thus rendered ineffective assistance.  He also asserts that the court violated

his Sixth Amendment rights by sentencing him based on facts not found by the jury. The government contends that under the test in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), Cox can show neither that his counsel's performance was deficient nor that Cox was prejudiced. The government also observes that Cox cannot rely on the interpretation of the Sixth Amendment in <u>Booker</u> because the rule in that case does not apply retroactively. The court agrees that Cox's claims are without merit.

I.   <u>Ineffective Assistance of Counsel</u>

To prevail as a habeas petitioner on a claim of constitutionally inadequate counsel, Cox must overcome the strong presumption that counsel provided effective assistance. <u>See</u> <u>Strickland</u>, 466 U.S. at 689. The Second Circuit has repeatedly "declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised." <u>See</u> <u>Loliscio v. Goord</u>, 263 F.3d 178, 195 (2d Cir. 2001). Under <u>Strickland</u>, a habeas petitioner claiming ineffective assistance of counsel must make a two-part showing. First, the petitioner must demonstrate that counsel's performance was deficient -- that is, errors were made of such serious magnitude that the petitioner was deprived of the counsel guaranteed by the Sixth Amendment. <u>See</u> <u>Strickland</u>, 466 U.S. at 687. Second, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the

4

result would have been different.  See id. at 694.

Cox maintains that his trial counsel made a number of errors that rendered his representation constitutionally inadequate. Specifically, he contends that counsel should have (1) requested a hearing to consider the audibility of an audio tape containing a recorded conversation between Marazita and Jason Cox that inculpates Clinton Cox, and raised an objection under the Confrontation Clause to the admission of the tape; and (2) objected to the indictment's failure to allege that Cox "willfully" became a member of the drug-trafficking conspiracy. The government maintains that the court properly admitted the audio tape, and that the indictment was not defective.[1]  Thus,

---

[1] In its briefing, the government treats Cox's argument that the court improperly admitted the audio tape as a substantive argument rather than a ground for showing ineffective assistance of counsel, and contends that the claim is procedurally barred because Cox could have raised the issue on direct appeal but failed to do so.  See Sanchez-Llamas v. Oregon, Nos. 04-10566 and 05-51, 2006 U.S. LEXIS 5177, at *33 (U.S. June 28, 2006). However, Cox's § 2255 petition itself states that "[a]ll issues should be consider[ed] under ineffective assistance of [t]rial and [a]ppellate counsel[]."  See § 2255 Petition [doc # 212], at 6.  Presumably, Cox contends that his counsel erred because trial counsel failed to move to dismiss the indictment and appellate counsel failed to raise the issue.

Because Cox raises the admissibility of the audio tape as part of an ineffective assistance of counsel claim, he falls within the exception allowing ineffective assistance of counsel to be raised for the first time in a habeas petition.  See Massaro v. United States, 538 U.S. 500 (2003).  It is unclear, however, whether the ineffective assistance of counsel claim Cox raises in his § 2255 petition is procedurally barred for another reason -- because he already raised an ineffective assistance of counsel challenge on direct appeal.  The Second Circuit has determined that in some circumstances, a habeas petitioner may

the government argues, Cox can show neither that counsel's performance was deficient nor that Cox suffered prejudice. The court agrees.

    A.   <u>Admissibility of the Audio Tape</u>

Cox contends that his counsel provided ineffective representation at trial because he failed to challenge the admissibility of the recorded conversation between Marazita and Jason Cox. In that conversation, Jason Cox directed Marazita to page Grant, whom Jason Cox identified as "Clinton's boy." Cox describes these recordings as "entirely or substantially inaudible and tainted," and contends that counsel should have moved to exclude the tape. The government argues that it is unlikely Cox would have prevailed on a motion to exclude the recordings, and the court agrees.

As the government observes, the Second Circuit has expressed "a clear preference for the admission of recordings notwithstanding some ambiguity or inaudibility, as long as the

---

assert an ineffective assistance claim, even if he raised an ineffective assistance claim on direct appeal, if he asserts a new and different ground to support his contention that counsel's performance was deficient. <u>See</u> <u>Riascos-Prado v. United States</u>, 66 F.3d 30 (2d Cir. 1995)(concluding that petitioner's argument that counsel had a conflict of interest leading him to pressure the petitioner to plead guilty was a different ground for asserting ineffective assistance of counsel than claim raised on direct appeal that counsel did not explain to the petitioner the consequences of his guilty plea). The court declines to consider whether Cox's ineffective assistance of counsel claim is procedurally barred, concluding that Cox cannot establish that counsel's performance was deficient under <u>Strickland</u>.

recordings are probative." United States v. Arango-Correa, 851 F.2d 54, 58 (2d Cir. 1988). The mere fact that some portions of a tape recording are inaudible does not by itself require exclusion of the tape. See id. Unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy, the recording is admissible. See id. The recording in this case was reliable enough for the government to produce a detailed transcript of the recording, and any portions of the tape that are inaudible did not render the tape untrustworthy in its entirety. Thus, Cox's attorney acted reasonably in declining to pursue a motion to exclude this evidence.

Cox also contends that counsel should have challenged the admission of the audio tape on the ground that its admission violated the Confrontation Clause of the Sixth Amendment because it included "a statement from a non-testifying accomplice" that prejudiced Cox because he could not cross-examine the declarant. The government contends that Jason Cox's statements on the tape were statements made in furtherance of the conspiracy, which the court properly admitted under Fed. R. Evid. 801(d)(2). The court agrees.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const.

Amend. VI.  However, "not all hearsay implicates the Sixth Amendment's core concerns." Crawford v. Washington, 541 U.S. 36, 51 (2004).  The Confrontation Clause applies to "witnesses" against the accused -- in other words, those who "bear testimony."  See id.  Statements made in furtherance of a conspiracy are generally not testimonial and are "exceptions to the hearsay rule that encounter[] no Confrontation Clause obstacle."  See United States v. Stewart, 433 F.3d 273, 292 (2d Cir. 2006).  The court's admission of the taped conversation between Jason Cox and Marazita was therefore proper under Fed. R. Evid. 801(d)(2) and constitutional under the Confrontation Clause.  Thus, Cox's counsel was not deficient for failing to move to exclude the audio tape, and Cox cannot establish the first prong of the Strickland test.[2]

---

[2] Even if counsel's decision not to challenge the audio tapes was so ill-advised that his representation fell below prevailing professional norms, Cox still cannot demonstrate that but "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  The evidence of Cox's drug-trafficking activities was so overwhelming that the audio recording would not have been decisive.  The government introduced the testimony of three cooperating witnesses, each of whom had worked for Cox in the drug-trafficking operation; the testimony of law enforcement officers who recovered 397 grams of crack cocaine from a vehicle in which Cox was a passenger; and cellular phone records, motel guest records, and other documents that tied Cox to the operation.  Thus, even if the court had excluded the audio tapes, the jury likey would have convicted him of the drug-trafficking charges anyway based on the substantial evidence presented by the government.

B.  Sufficiency of the Indictment

Cox also maintains that the indictment on which he was tried failed to allege that he "willfully" entered a conspiracy to distribute narcotics.  The government contends that the indictment was not defective because it alleged the proper mens rea for conspiracy.  The court agrees that the indictment was not defective and that Cox cannot base his ineffective assistance of counsel claim on counsel's failure to object.

A federal indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  An indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events.  See United States v. Walsh, 194 F.3d 37, 44 (2d Cir. 1999).

Cox contends that because "acting willfully" is "an implied necessary element" of a drug-trafficking conspiracy under § 846, his indictment insufficiently alleged the appropriate mens rea for the crime of conspiracy.  As the government points out, though, Cox's indictment did charge him with "knowingly and intentionally" engaging in the conspiracy, and the Second Circuit has held this language to be sufficient for purposes of an indictment.  See United States v. Hernandez, 980 F.2d 868, 870-71

9

(2d Cir. 1992)(upholding an indictment under § 846 for "knowingly and intentionally" conspiring to distribute narcotics). Cox does not cite, nor is the court aware of, any case that draws a material distinction between the terms "willful" and "intentional" for purposes of assessing the sufficiency of an indictment. See also Black's Law Dictionary at 1630 (defining "willful" as "[v]oluntary and intentional . . .").

Even if Cox's indictment contained some trifling defect, which it does not, "[c]onvictions are no longer reversed because of minor and technical deficiencies which did not prejudice the accused." See United States v. Goodwin, 141 F.3d 394, 400-01 (2d Cir. 1997)(quoting United States v. Wydermyer, 51 F.3d 319, 324 (2d Cir. 1995)). Cox cannot argue in earnest that his defense was prejudiced or that he was not sufficiently informed of the charges against him for purposes of asserting a double jeopardy defense merely because his indictment used the phrase "knowingly and intentionally" rather than the term "willfully." As the Goodwin court observed, "imperfections of form [in an indictment] that are not prejudicial are disregarded, and common sense and reason prevail over technicalities." See Goodwin, 141 F.3d at 401. Cox's counsel demonstrated common sense rather than incompetence in failing to challenge the sufficiency of his indictment.

II.  Sixth Amendment Challenge to Cox's Sentencing

Cox also argues that his sentence violates the Sixth Amendment because the court based his sentence on facts not found by a jury.  His original petition relies on Blakely, which invalidated aspects of a state sentencing scheme, but Cox subsequently filed a "Notice of Judicial Cognizance" [doc # 221] asserting that the Supreme Court's decision in Booker, which considered the constitutionality of the federal sentencing guidelines, applies to his sentencing.  The court construes Cox's claim as a challenge under Booker, but concludes that Cox cannot avail himself of the rule announced by the Supreme Court in that case.

Although Cox maintains that this court should treat Booker as having established a "watershed rule" of procedure that warrants retroactive application for habeas petitioners, the Second Circuit has soundly rejected this proposition.  See Guzman v. United States, 404 F.3d 139, 142-43 (2d Cir. 2005).  The rule in Booker "does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that Booker issued."  See id. at 144.  Cox's conviction became final on October 6, 2003, when the Supreme Court denied his petition for certiorari.  See Cox v. United States, 540 U.S. 854 (2003).  Thus, because Cox's conviction had been final for well over a year by the time Supreme Court decided Booker, he cannot

11

avail himself of the rule in that case.

## CONCLUSION

For the foregoing reasons, Cox's petition for a writ of habeas corpus [doc # 212] and motion for a stay or to hold the petition in abeyance [doc # 244] are DENIED.  Because petitioner fails to make a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.  See 28 U.S.C. § 2253.

So ordered this 20th day of July, 2006, at Bridgeport, Connecticut.

_____/s/_____

Alan H. Nevas,
United States District Judge