UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2008 APR 25 P 1:26
U.S. DISTRICT COURT

UNITED STATES OF AMERICA                Case No.: 3:00-cr-69(AHN)

v.

CLINTON COX,
          Defendant

Objections and Proposed Addendum to the Presentence Report

    **COMES NOW** the above named Petitioner, who proceeds pro-se and hereby submits the instant objections to the government's Response to Petitioner's motion for modification of sentence and memorandum of law in support of Petitioner's proposed addendum to the Presentence report. In support thereof it is stated:

    The government's reliance on "pre-Booker" case law, which routinely required a defendant's sentence to be based upon what a Judge believes an offender "really" did, as opposed to the acted crime of which he was convicted by the jury, is nothing less than offensive - let alone unconstitutional. That is, requiring a court to consider facts known now to be in violation of The Sixth Amendment would import that Sixth Amendment back into the Revised Guideline Range, and render the Revised Guideline range, and render the new void as a matter of law.

Memorandum of law in support of Petitioner's Proposed Addendum
<u>To The Presentence Report</u>

<u>Discussion</u> -

Based on the authority created by 18 U.S.C. § 3582(c)(2), § 3553(a), Amendment 706, U.S.S.G. § 1B1.10 of the guidelines and The Supreme Court's intervening decisions in <u>United States v. Booker</u>, 543 U.S. 220 (2005); <u>Rita v. United States</u>, 127 S.Ct. 2456 (2007); <u>Gall v. United States</u>, 128 S.Ct. 586 *2007); and <u>Kimbrough v.</u> 128 S.Ct. 558 (2007) all support (as discuss herein) the court should significantly reduce Petitioner's sentence. There are a number of non-guidelines factors that justify a sentence below even the new guideline range.

(i) <u>Due Process requires a Re-sentencing Hearing</u>

Petitioner Federal Constitutional right to due process of law would be violated absent a Re-sentencing hearing. <u>United States v. Fuller</u>, 426 F.3d 556, 565 (2nd Cir. 2005)(in discussing the pre-and post-<u>Booker</u> cases, The Court noted that a district court's failure to comply with § 3553(c)(2) denies a defendant "the right to argue more effectively... Whether... a sentence is reasonable").

Courts routinely ordered hearings to assist in deciding § 3582(c)(2) motions for a new sentence even before § 1B1.10 was revised to invite the presentation of new facts and arguments not considered in the original sentencing to deny or reduce relief.

1

See, e.g., <u>Quesada-Mosquera v. United States</u>, 243 F.3d 685, 686 (2nd Cir. 2001). At least one has already done so in this context. See, <u>United States v. Moore</u>, 2008 WL 161668, *2 (S.D. Ohio 1/15/08) (granting defendant § 3582(c)(2) motion for resentencing under crack guideline and ordering a hearing to be scheduled following receipt of a new Presentence Investigation Report).

A new Presentence Investigation Report and hearing is necessary in this pre-<u>Booker</u> case because "it would be, to say no more, ironic if the relief available to a defendant who recieved a sentence that is now recognized to have been unconstitutional because imposed under mandatory guidelines base on non-jury fact findings and unwise because the guideline under which he was excessively severe can be limited by a still-mandatory guideline". See, <u>United States v. Polanco</u>, 2008 WL 144825, *2 (S.D.N.Y. Jan. 15, 2008).

Here, Petitioner's original and Revised Guideline Calculations are based upon facts not encompassed with the jury's verdict and beyond the maximum permitted by that verdict. That is, both are unconstitutional on their face. Thus, the constitutionally required guideline calculation should be used as the natural starting point.

(ii) <u>The Effect Of An Incorrect Guideline Calculation</u>

Although the guidelines are now advisory and a sentencing court has great discretion over the substance of the sentence, the correct calculation of the applicable guidelines range remains

an important procedural requirement. First, the sentencing court is required to calculate the guideline range in each case, and that calculation is the focus of the parties' arguments. Second, the court must state the reasons for its sentence and explain whether a within - guidelines sentence is appropriate in the particular case, a process which generally will require a correct guidelines calculation. Third and finally, the district court is to exercise its discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless of whether if veries from the sentence calculated under the guidelines. A correctly calculated guidelines range will often be a necessary precondition of the appeals court's reasonableness review.

    The correct guideline calculation is not merely one of three steps, but rather constitutes the "Natural Starting Point" from which the Sentencing Court exercise its discretion under § 3553(a). As The Supreme Court recently confirmed in <u>Gall v. United States</u>, "a district court should begin all sentencing proceedings by correctly calculating the applicable guidelines range. As a matter of administration and to secure nationwide consistency, the guidelines should be the starting point and the initial benchmark." 128 S.Ct. 586, 596 (2007). The court further observed that "[T]he fact that § 3553(a) explicitly directs sentencing courts to consider the guidelines supports the premise that district courts must begin their analysis with the guidelines and remain Cognizant of them throughout the sentencing process "Id at 597 n.6 the failure to correctly apply the guidelines was specifically listed

3

by The supreme Court in <u>Gall</u> as "Significant procedural error". Id. at 597. A correct calculation, therefore, is crucial to the sentencing process and result.

In <u>United States v. Grant</u>, 524 F.Supp. 2d 1204, 1215 (C.D. Cal. 2007) district court Judge Spencer Letts noted, it is important to consider the landmark case of <u>Booker</u>. Because, "prior to <u>Booker</u>, courts sentenced under the assumption that the guidelines were free from constitutional flaws. It was not until two decades later, after millions of people had served the full terms of their sentences, that courts were informed that their assumption had been wrong. The lesson of <u>Booker</u>, this, is that reliance on precedents, and on extensions of those precedents, without fresh reasoning is not only imprudent, but reckless." Id at 1215. See also, <u>United States v. Kandirakis</u>, 441 F.Supp. 2d 282 (D. Mass. 2006), stating:

> "For seventeen years federal courts had sentencing offenders unconstitutionally. Think about that the human cost is incalculable - thousands of Americans languish in prison under sentences that today are unconstitutional. The institutional costs are equally enormous - for seventeen years the American Jury was disparaged and disregarded in derogation of its constitutional function; a generation of federal trial judges has lost track of certain core values of an independent judiciary because they have been brought up in a sentencing system that strips the words "burden of proof," "evidence", and "facts" of genuine meaning; and the vulnerability of our fair and impartial federal trial court system to attack from the political branches of our government has been exposed as never before in our history."

Id. at 282-83

In sum, "the fact that the constitutional rights of criminal defendants were violated in a large percentage of cases for a long time by well - meaning prosecutors and good judges does not excuse [courts] from remedying those wrongs." United States v. Clark, 260 F.3d 382, 388 (5th Cir. 2001). Thus, a correct calculation of the guidelines is required under the constitution.

(iii) The Constitution Requires The Correct Guideline Calculation

In the case at bar, Petitioner is entitled to a new gideline calculation because the original guidelines calculations and the revised guidelines calculation are based on facts that were neither found by the jury nor admitted by the defendant. That is, requiring a court to impose a new sentence based on facts that were initially found in violation of the Sixth Amendment would import that Sixth Amendment into the new sentence, and render the new sentence in violation of § 3553(a), Booker, Gall, and Kimbrough and void as a matter of law.

The pre-Booker case law routinely require a defendant's sentence to be based upon what a judge believes an offender "really" did, as opposed to the actual crime of which he was convicted by the jury, is nothing less than offensive - let alone unconstitutional, the pre-Booker sentencing system relied on findings that rest on "a mishmash of date[,] including blatantly self serving hearsay largely served up by the Department of Justice". Kandirakis, 441 F.Supp. 2d at 303.

A fundamental premise of our constitutional is that it is

not what one "really" does that can be punished, but only that conduct which is proven at trial. The mandate of The United States Constitution is simple and direct:

> "If the law identifies a fact that warrants deprivation of a defendnat's liberty or an increase in that deprivation, such fact must be proven to a jury beyond a reasonable doubt.

See U.S. Const. Art. III §2, cl. 3.

This rule been articulated by The Supreme Court in essentially the same formula for over a century. See, <u>Davis v. United States</u>, 160 U.S. 469, 493 91895)("No man should be deprived of his life under the forms of law unless the jurors who try him are able, upon their consciences, to say that the evidence before them... is sufficient to show beyond a reasonable doubt the existance of every fact necessary to constitute the crime charged"). The rule has three essential components: (1) every fact necessary to punishment; (2) proved to a jury; and (3) beyond a reasonable doubt.

It is respectfully submitted, that in light of the foregoing, it is not reasonably possible to fairly attribute large quantities of crack cocaine to Petioner not charged in the indictment or submitted to the jury. Thus, any errors in the procedure for selecting the original sentence under Than-Mandatory Sentencing guidelines regime would be plain error and prejudicial, if this court under the advisory guidelines regime would have imposed a materially different sentence. <u>United States v. Williams</u>, 475 F.3d 468 (2nd Cir. 2007) Cf., also <u>United States v. Gonzalez</u>,

6

420 F.3d 111, 120 (2nd Cir. 2005)("A defendant cannot be ... subject to mandatory minimum sentence pursuant to §. 841(b)(1)(A) or (b)(1)(B) unless the statute's presecribed drug quantity is proved beyond a reasonable doubt to a jury") Id at 120. Here, the jury did not find the statute's presecribed drug quantity neceessary to support a mandatory minimum sentence under the guidelines.

(iv) Parsimony Clause

Failure to use the constitutionally required guidelines calculation would violate the "Parsimony Clause" of 18 U.S.C. § 3553(a), which provides that "[T]he [district] court shall impose a sentence sufficient, but not greater than necessary, to comply with the purpose set forth in paragraph (2) of [§3553(a)]." Paragraph (2) provides that a district court shall consider "the need for the sentence imposed ... (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (8) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational treatment in the most effective manner". 18 U.S.C. § 3553(a)(2). Before imposing a sentence, a district court also must consider the six remaining factors set forth in § 3553(a)(1)-(7). Id. § 3553(a). See also, United States v. Ministro-Tapia, 470 F.3d 137 (2nd Cir. 2006).

7

In the case at bar, Petitioner's original and Revised Guideline calculations are greater than the maximum penalty authorized by the statute for the <u>offense of conviction</u>, in this case. That is, absent errors made in reaching the original sentence the maximum guideline sentence Petitioner could have receive under the guidelines, would have been less than that actually imposed.

(v) <u>100:1 crack/power cocaine differential</u>

Petitioner, who is a African American Male, notes that during the past five years approximately 25,000 defendants have been sentenced in federal cases involve crack-cocaine charges. Their drug sentences on average are approximately 50% longer than those who were sentenced on power cocaine charged. Statistically most of those who are sentenced for crack cocaine charges are African American Men. e.g., During 2006, 81% of those senetenced in federal crack-cocaine cases were African American. Only 27% of those sentenced in power cocaine cases were African American. To further break down this statistical reviews conducted of 5, 619 offenders in crack-cocaine cases, 81% of them are Black, 9% of them are White, and equal 9% of them are Hispanic and 1% is listed as "others". Of a total of 5,830 total offenders involved in power cocaine case, 27% of them are Black, 15% of them are white, another 1% are classified as "other" and 57% of them are Hispanic.

Some additional food for thought on the subject of crack cocaine sentences, crack-cocaine is the <u>only</u> drug that carries a mandatory sentence for first offense possession. A person sentenced in federal court for possessing 5 grams automatically receives a 5-year sentence. The maximum federal sentence for simple possession is one year in priosn for <u>other drugs</u>. The 100 to 1 disparity basically translates that a person caught with 5 grams of crack cocaine gets a mandatory minimum of five years in prison. On the otherhand, it takes 500 grams of power cocaine to merit that same punishment. While these circumstance certainly do not eliminate Petitioner's culpability and need to be punished, they do help explain how he arrived at his current predicament and mitigate against the original mandatory minimum sentence.

When Petitioner was sentenced in this case for a crack-cocaine offense which occurred before <u>Booker</u> <u>supra</u>, <u>Rita</u> <u>supra</u>, <u>Gall</u> supra., and <u>Kimbrough</u> <u>supra</u>. There was an unacceptable likelihood of error. Certainly, the court acted under the influence of a wide spread assumption that is now known to be erroneous. That is, where the court would have exercised its discretion to mitigate the sentencing range produced by the 100 to 1 disparity. <u>Kimbrough, Supra</u>.

(vi) <u>The original and revised guidelines calculations system violates The Fifth and Sixth Amendments</u>

Petitioner objects altogether the policy of allowing the

court to determine only the "Revised Guideline" range, while still acknowleding that the Revised Guideline range may not be consistant with the policy statement under § 3582(c)(2) and § 1B1.10. The reason for the objection is that such a determination is a fact-finding determination, impacts on punishment and was within the province of thejury to determine. See <u>United States v. Stinson</u>, 508 U.S. at 38 ("Commentary in the Guidelines Manual that interprots or explains a Guideline is authoritative unless it violates the constitution")(emphasis added).

The present "Revised" system being used violates the 5th and 6th Amendments. The Sentencing Court is replying facts that was never submitted to a jury for proof beyond a reasonable doubt.

The United States Supreme Court recently addressed a similar sentencing procedure when it issued a decision in <u>Cuningham v. California</u>, 127 S.Ct. 856 (2007) in which the court held the California DSL Sentencing procedure violated the Sixth Amendement.

Those is no difference in practice of California's DSL and the sentencing procedure adopted within the Federal System today as Justice alito in his dissent states that the California DSL is indistinguishable in any constitutionally significant respect from the advisory guideline scheme that The Supreme Court approved in <u>Booker</u>, see <u>Cunningham</u> at 873.

In California's DSL, a jury acts as a low level gatekeeper to determine guilt or innocence of a particular charge. The particular charge carries a statutory minimum and maximum sentence but with a presumptive statutory determinate sentence falling

within the minimum and maximum sentence.

In the present case, the government now urges the court to rely on facts hold Petitioner accountable to a "mandatory" sentence under the crack cocaine guidelines, where the jury found him accountable for less. Obviously, the jury had it within their province to make the "mandatory" weight findings.

Thus, the Revised guideline range should be determined soley by the Jury verdict in this case, which is in accordance with 18 U.S.C. 3553(a) and the Fifth and Sixth Amendments.

(vii) <u>Rehabilitation</u>

Lastly, this court should consider Petitioner's post-sentencing efforts at rehabilitation. See, U.S.S.G. §1B1.10(b)(2)(A) and comment. (N.1(B)). Since his incarceration Petitioner has completed and is attending educational and vocational programs. (See documents attached hereto). And, Petitioner's work history includes several assignments to various details in the Bureau of Prisons. He has constantly received outstanding work evaluations. Accordingly, Petitioner's post-sentencing conduct establishes that he has adjusted well in prison and indicates that a non-guideline sentence should be considered.

The Second circuit made clear that "the district courts do now have jurisdiction pursuant to 18 U.S.C. §3582(c)(2) to decide in the first instance whether to modify previously - imposed sentences where the cocaine ranges on which they were based have subsequently been lowered". "In deciding whether to modify the sentence district courts must consider the factors set forth in 18 U.S.C. §3553(a) a new and in light of <u>Gall</u> and <u>Kimbrough</u>,

and applicable Sentencing Commission policy statement" the Court said. See, <u>United States v. Regaldo</u>, No. 05-5739 (2nd Cir. 3/4/08).

## CONCLUSION

For all the foregoing reasons and the reasons set-forth in Petitioner's § 3582(c)(2) motion, This Honorable Court should use the Constitutionally Required Guidelines Calculations.

Respectfully Submitted,

_____
Clinton Cox, pro-se

## CERTIFICATE OF SERVICE

I hereby certify that on April 17th, 2008, I caused a copy of the foregoing documents to be sent by first-class mail, postage prepaid, to the office of the U.S. Attorney for the District of Connecticut. *William M. Brown, JR*
*U.S. Attorney*
*915 Lafayette Blvd*
*BPT, CT 06604*

_____
Clinton Cox, pro-se