UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------x
:
UNITED STATES OF AMERICA : Case No. 3:00CR00069(AHN)
:
v. :
:
CLINTON COX : June 24, 2008
:
------------------------------------------------------x

## MEMORANDUM IN SUPPORT OF MOTION TO AMEND JUDGMENT

The defendant, Clinton Cox, hereby submits this memorandum, through counsel, in further support of his pro se motion to amend the judgment in his case pursuant to 18 U.S.C. § 3582(c)(2).[1]  The defendant respectfully requests that the Court impose a reduced sentence that takes into account all of the factors set forth in 18 U.S.C. § 3553(a) and accounts for the disparity between the Guidelines range applicable to his crack offense – 360 months to life – and the range that would have applied to the same offense, with the same enhancements, involving powder – 168 to 210 months.

## AMENDMENT 706 AND THE CRACK-POWDER DISPARITY

Amendment 706 to the Sentencing Guidelines took effect on November 1, 2007.  See U.S.S.G., App. C, Amdt. 706 (2007).  This amendment alters the drug quantity table set forth in U.S.S.G. § 2D1.1, reducing by two levels the base offense levels for offenses involving crack cocaine.  See id.  The amendment was adopted in an effort to address, at least in small part, the dramatic and unfair disparity between sentences for offenses involving crack cocaine and

---

[1] This memorandum addresses only the applicability of the recent amendments to the Sentencing Guidelines relating to crack cocaine offenses; to the extent the defendant seeks to modify his sentence on other grounds, such arguments will be presented by the defendant in pro se filings.

otherwise similar offenses involving powder cocaine.  See id.

The unfairness of the disparate treatment between crack and powder cocaine offenses is well-documented and indisputable.  See generally United States Sentencing Commission, Report to Congress:  Cocaine and Federal Sentencing Policy (May 2007) (hereinafter "2007 Sentencing Commission Report"); see also Kimbrough v. United States, 128 S. Ct. 558, 568-69 (2007).  The disparity itself and the underlying assumptions giving rise to it have largely been discredited, as described by the Supreme Court in Kimbrough:

> First, the Commission reported, the 100-to-1 ratio rested on assumptions about the relative harmfulness of the two drugs and the relative prevalence of certain harmful conduct associated with their use and distribution that more recent research and data no longer support. [The] ratio Congress embedded in the statute far 'overstates' both 'the relative harmfulness' of crack cocaine, and the 'seriousness of most crack cocaine offenses'.  For example, the Commission found that crack is associated with 'significantly less trafficking-related violence . . . than previously assumed.'  It also observed that 'the negative effects of prenatal crack cocaine exposure are identical to the negative effects of prenatal powder cocaine exposure.'  The Commission furthermore noted that 'the epidemic of crack cocaine use by youth never materialized to the extent feared.'
>
> Second, the Commission concluded that the crack/powder disparity is inconsistent with the 1986 Act's goal of punishing major drug traffickers more severely than low-level dealers.  Drug importers and major traffickers generally deal in powder cocaine, which is then converted into crack by street-level sellers.  But the 100-to-1 ratio can lead to the 'anomalous' result that 'retail crack dealers get longer sentences than the wholesale drug distributors who supply theym the powder cocaine from which their crack is produced.'
>
> Finally, the Commission stated that the crack/powder sentencing differential 'fosters disrespect for and lack of confidence in the criminal justice system' because of a 'widely-held perception' that it 'promotes unwarranted disparity based on race.'  Approximately 85 percent of defendants convicted of crack offenses in federal court are black; thus the severe sentences required by the 100-to-1 ratio are imposed 'primarily upon black offenders.'

Kimbrough, 128 S. Ct. at 568 (internal citations omitted); see also Gall v. United States, 128 S. Ct. 586 (2007).

The Supreme Court found that it was not unreasonable for a district court to conclude that

the 100-to-1 "crack/powder disparity is at odds with § 3553(a)," resulting in sentences greater than necessary to serve the required purposes. Id. After Kimbrough was decided, the Sentencing Commission made its amendments to § 2D1.1 retroactive – an unusual step – in an effort "to alleviate some of the urgent and compelling problems associated with the penalty structure for crack cocaine offenses." See Sentencing Guidelines for United States Courts, 73 Fed. Reg. at 220. In fact, the Sentencing Commission emphasized that the amendment is not a complete response to the serious inequities in the Sentencing Guidelines for crack offenses:

> The Commission . . . views the amendment only as a partial remedy to some of the problems associated with the 100-to-1 drug quantity ratio. It is neither a permanent nor a complete solution to these problems. Any comprehensive solution requires appropriate legislative action by Congress. It is the Commission's firm desire that this report will facilitate prompt congressional action addressing the 100-to-1 drug quantity ratio.

2007 Sentencing Commission Report, at 10.

It was a recognition of a very serious flaw in the sentencing guidelines that led to the amendment at issue here. There can be no question but that "the crack/powder disparity produces disproportionately harsh sanctions, i.e., sentences for crack cocaine offenses 'greater than necessary' in light of the purposes of sentencing set forth in § 3553(a)." Kimbrough, 128 S. Ct. at 575. The significance of this flaw is not lessened by the details of a specific defendant's offense. Mr. Cox's sentence was unjustly severe, partly because of the dramatic disparity between crack and powder cocaine offenses that pervaded the guidelines applicable at the time of his sentencing – guidelines which were then binding on this Court. The Sentencing Commission recognized this injustice and set out to address it by enacting an amendment that would close the gap, if only slightly, between sentences for the two forms of cocaine. Mr. Cox is entitled to have the Court reconsider his sentence in light of the new law on this disparity.

**A.     The Defendant's Base Offense Level Has Been Reduced by the Amendment.**

The Government has filed a memorandum arguing that Mr. Cox is not eligible for a reduction in his sentence because "the amendments do not have the effect of lowering the defendant's guidelines range." Gov't Memo. at 8. The Government concedes, however, that **the base offense level applicable to Mr. Cox has changed.** See Gov't Memo. at 10. His base offense level at the time of his original sentencing was 38; now it is 36. This fact alone is sufficient to warrant the reopening of this sentence by the Court. A material change has occurred in the Guidelines that were used to determine the defendant's sentence, and an even more dramatic change has occurred in the law governing all federal criminal sentences. It would be fair and just to reconsider Mr. Cox's sentence in light of these important changes.

**B.     The Defendant's Sentence Was "Based On" § 2D1.1.**

Although Mr. Cox's base offense level, as determined by § 2D1.1 of the Guidelines, has in fact been reduced by the amendment, the Government asserts that Mr. Cox is ineligible to reap any benefit from the amendment because the Court found that a 4-level enhancement was appropriate under § 3B1.1 of the Guidelines. The Government contends that Mr. Cox therefore is not entitled to any relief. The defendant respectfully disagrees.

Section 3582(c)(2) requires only that a defendant's guideline range have been "based on a sentencing range" that was retroactively lowered, in order to qualify for a reduction. See 18 U.S.C. § 3582(c)(2). The phrasing of this sentence is important. The statute does not provide that the range must have been based solely on a sentencing range that was lowered. It simply requires that it have been "based on **a** sentencing range" that was lowered. The word "base," when used as a verb, means "to make, form, or serve as **a** base for." Merriam-Webster Online

Dictionary, 2008 (emphasis added).² There is an important difference between this definition, and the one the Government proposes, which would be "to make, form, or serve as **the** base for."

Mr. Cox's term of imprisonment was "based on" a number of sentencing ranges. In the first instance, it was "based on" the range 324 to 405 months, which applied under the old drug quantity table in § 2D1.1 to an offense level 38 and CHC IV. The guideline range applicable to Mr. Cox was ultimately increased under Chapter 3 of the Guidelines, but the fact remains that in the first instance, amongst other ranges, Mr. Cox's sentencing range was "based on" the range dictated by § 2D1.1. As set forth above, the sentencing range applicable to Mr. Cox under § 2D1.1 has been reduced by a retroactive amendment to the Guidelines. He therefore is entitled to a resentencing.

The Guidelines are applied in order, starting with Chapter 1 of the Guidelines Manual and ending with Chapter 5. See U.S.S.G. § 1B1.1 (Nov. 2007). In no case can a court simply jump to the inside of the back cover and choose a sentencing range out of that table without having gone through each step required. Determination of the appropriate range under the Chapter 2D drug quantity table is one step in the process. Determination of an appropriate role adjustment – either up or down – under Chapter 3 is another step. Calculation of criminal history under Chapter 4 is also required. And that being so, a given defendant's guideline range is "based on" various provisions in Chapters 1, 2, 3, 4 and/or 5.

Under the Government's reading, only a defendant whose sentence was based **entirely and solely** on the amended provisions of § 2D1.1 is eligible for resentencing. Such an argument disregards the complex nature of a Guidelines calculation. In fact, **the Supreme Court has acknowledged that a sentence under the Guidelines regime is not "based on" just one factor**

---

² Available online at www.merriam-webster.com/dictionary/base.

**or provision.**  To the contrary, "district court judges determine sentences <u>based on</u> the <u>various</u> offense-related and offender-related factors identified by the Guidelines of the United States Sentencing Commission."  <u>Burns v. United States</u>, 501 U.S. 129, 133 (1991) (emphases added).  Every sentence under the Guidelines system is determined "based on" a variety of factors and provisions.  Every sentence is <u>based</u> – in part – on multiple provisions in the Guidelines manual.

When a defendant is convicted of an offense involving crack cocaine, the provisions of § 2D1.1 <u>always</u> come into play – but only as one of many factors that are eventually considered in reaching a recommendation under the Guidelines.  Indeed, it is impossible for a Guidelines range to be calculated solely on the basis of § 2D1.1.  At the very least, reference is required to Chapter 4 to determine a criminal history category, and the great majority of sentencing calculations require consideration of numerous provisions of the Guidelines Manual.  An offense level may be increased or decreased to account for, <u>inter alia</u>, the defendant's role in the offense, the nature of the victim, the means used to commit the offense, the defendant's record of previous convictions, the defendant's lack of honesty in dealings with the Court, or his assistance to the Government.  A sentence in a crack cocaine case that is arrived at after application of the Guidelines provisions relating to these factors is still "based on" § 2D1.1.  Sometimes, the eventual sentence arrived at seems to bear little relation to the base offense level determined by § 2D1.1, but **no matter the end result, no matter the twists and turns taken to arrive there, that sentence is – at least in part – "based on" § 2D1.1.**

Even the language of the PSR, when compared to the language of § 3582, suggests that Mr. Cox is eligible for resentencing.  The PSR states quite clearly that the "base offense level" applicable to Mr. Cox's offense – and the starting point for the determination of the appropriate sentence in his case – was 38, and that the base offense level "is found in Guideline § 2D1.1."

PSR ¶ 41.  What else could the **"base offense level"** be but the offense level on which, in the first instance, the defendant's guideline range is **based**?  It is of course true, as discussed above, that other sections of the Guidelines came into play after the base offense level was determined, but <u>none of the adjustments made after the initial determination can undo the fact that the base offense level was determined by § 2D1.1</u>.

The fact is, a Guidelines sentence is "based on" a variety of factors, and in this case, the starting point – the true <u>base</u> on which the determination as to the appropriate sentence for Mr. Cox was built – was the offense level of 38 assigned by § 2D1.1.  That offense level has been reduced, and Mr. Cox's sentence should be reconsidered in light of that amendment.

**C.**     **The Guidelines Are No Longer Binding on this Court.**

In resentencing the defendant, the Court must treat the Guidelines, their commentary, and the Commission's policy statements as advisory.  See <u>United States v. Booker</u>, 543 U.S. 220, 245 (2005).  When sentencing (or, as here, resentencing) a defendant, this Court "may not presume that the Guidelines range is reasonable."  <u>Gall v. United States</u>, 128 S. Ct. 586, 596 (2007).  Rather, this Court must treat the Guidelines as just "one factor among several" that 18 U.S.C. § 3553(a) mandates it consider.  <u>Kimbrough v. United States</u>, 128 S. Ct. 558, 564 (2007).  Once this Court correctly calculates the sentence that the Guidelines recommend, the Court must then "make an individualized assessment," considering the remaining factors sets forth in § 3553(a).  <u>Gall</u>, 128 S. Ct. at 597.

The Guidelines reflect a "wholesale" view "rough[ly] approximat[ing] … sentences that <u>might</u> achieve § 3553(a)'s objectives," but <u>Booker</u> and § 3553(a) require this Court to impose an individualized sentence "at retail" that actually <u>does</u> achieve § 3553(a)'s objectives in the case before it.  <u>Rita v. United States</u>, 127 S. Ct. 2456, 2463, 2465, 2469 (2007) (emphasis added).

This Court thus must "filter the Guidelines' general advice through § 3553(a)'s list of factors." Id.; see also Gall, 128 S. Ct. at 598 ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."). When the "rough approximation" arrived at by the Guidelines calculation conflicts with this Court's view of the sentence that is appropriate under § 3553(a), this Court has the discretion – and the duty – to disregard the Guidelines' recommendation. See, e.g., Rita, 127 S. Ct. at 2463–64 ("The sentencing courts, applying the Guidelines in individual cases, may depart (either pursuant to the Guidelines or, since Booker, by imposing a non-Guidelines sentence).").

This Court's discretion to find that the Guidelines' "rough approximation" of a proper sentence does not, in a particular case, comply with the dictates of § 3553, includes the discretion to disagree with the Sentencing Commission's policy judgments – particularly those giving rise to the drug quantity table set forth in § 2D1.1. See Kimbrough, 128 S. Ct. at 564 (holding that "under Booker, the cocaine Guidelines, like all other Guidelines, are advisory only," and therefore it is error for a district court to treat "the crack/powder disparity as effectively mandatory"). This Court, in other words, may find that the sentence recommended by the Guidelines "is 'greater than necessary' to serve the objectives of sentencing" in a specific case by "consider[ing] the disparity between the Guidelines' treatment of crack and powder cocaine offenses." Kimbrough, 128 S. Ct. at 564 (citing 18 U.S.C. § 3553(a)).

In United States v. Hicks, 472 F.3d 1167 (9th Cir. 2007), the Ninth Circuit acknowledged that Booker vests sentencing judges with the discretion to disagree with not only a specific sentence recommended by the Guidelines, but with the Sentencing Commission's policy

statements as well, and to do so specifically in the context of a motion to reduce a sentence under 18 U.S.C. § 3582(c). The Court held that § 3582(c)(2) "allows the district court to re-calculate the defendant's sentencing range using the newly reduced Guideline, and then determine an appropriate sentence in accordance with § 3553(a) factors." Hicks, 472 F.3d at 1170. **Booker's "clear language," the Ninth Circuit found, "makes the [re-calculated] range advisory."** Hicks, 472 F.3d at 1170 (emphasis added). The Ninth Circuit explained:

> Booker explicitly stated that, "as by now should be clear, [a] mandatory system is no longer an open choice." Booker, 543 U.S. at 263; see also id. at 264 (noting that district courts are "not bound to apply the Guidelines"). Although the Court acknowledged that Congress had intended to create a mandatory Guidelines system, Booker stressed that this was not an option: "[W]e repeat, given today's constitutional holding, [a mandatory Guideline regime] is not a choice that remains open. . . . [W]e have concluded that today's holding is fundamentally inconsistent with the judge-based sentencing system that Congress enacted into law." Id. at 265. The Court never qualified this statement, and never suggested, explicitly or implicitly, that the mandatory Guideline regime survived in any context.
>
> In fact, the Court emphasized that the Guidelines could not be construed as mandatory in one context and advisory in another. When the government suggested, in Booker, that the Guidelines be considered advisory in certain, constitutionally-compelled cases, but mandatory in others, the Court quickly dismissed this notion, stating, "we do not see how it is possible to leave the Guidelines as binding in other cases. . . . [W]e believe that Congress would not have authorized a mandatory system in some cases and a nonmandatory system in others, given the administrative complexities that such a system would create." Id. at 266. In short, Booker expressly rejected the idea that the Guidelines might be advisory in certain contexts but not in others, and Congress has done nothing to undermine this conclusion. Because a "mandatory system is no longer an open choice," id. at 263, district courts are necessarily endowed with the discretion to depart from the Guidelines when issuing new sentences under § 3582(c)(2)..

Hicks, 472 F.3d at 1170.

"Mandatory Guidelines," the Ninth Circuit concluded, "no longer exist, in this context or any other." Hicks, 472 F.3d at 1172.

To the extent that the Government relies on § 1B1.10 of the Guidelines for the proposition that the Court lacks authority to resentence Mr. Cox, this reliance is misplaced.

Section 1B1.10, like everything else in the Guidelines, <u>is not binding on this Court</u>. Offense levels, Criminal History Categories, role enhancements, departures, and policy statements are all simply advice in the post-<u>Booker</u> world. Thus, the policy statements set forth in § 1B1.10 do not preclude a district court from "go[ing] below the Guidelines' minimum when modifying a sentence under § 3582(c)(2);" to the extent they attempt to do so, they "must be void" under <u>Booker</u>. <u>Hicks</u>, 472 F.3d at 1172. Section 1B1.10 attempts to make the Guidelines mandatory in a § 3582(c)(2) proceeding, suggesting, <u>inter alia</u>, that "[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized" if the amendment in question "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B) (Mar. 2008). It opines that "proceedings under 18 U.S.C. § 3582(c)(2) and this policy statement do not constitute a full resentencing of the defendant." U.S.S.G. § 1B1.10(a)(3) (Mar. 2008). These statements of opinion by the Sentencing Commission should be considered by, but do not control, this Court.

The Supreme Court observed in <u>Neal v. United States</u>, 516 U.S. 284 (1996), that "the Commission does not have the authority to amend [a] statute" that the Supreme Court has previously construed, so as to say or allow something that the Supreme Court's construction of the statute precludes. <u>Neal</u>, 516 U.S. at 290. A statute <u>as construed by the courts</u> "controls" if it and a provision of the Guidelines conflicts. <u>See id.</u> at 294. The Commission cannot overrule or limit <u>Booker</u>, no matter what it says in § 1B1.10. Nor, for that matter, can the Commission overrule or limit judicial decisions such as <u>Hicks</u>, <u>Gall</u>, <u>Kimbrough</u>, or <u>Rita</u>. Accordingly, to the extent that U.S.S.G. § 1B1.10 (Mar. 2008) would render any provision of the Guidelines, including its commentary or policy statements, binding and mandatory on this Court, it is § 1B1.10 that must give way, not the Supreme Court's rulings.

**D.     The Crack/Powder Disparity Should Be Considered in a § 3582 Resentencing.**

There is another problem with the Government's argument that Mr. Cox is <u>per se</u> barred from resentencing. Prior to the Supreme Court's decision in <u>Kimbrough</u>, sentencing courts erroneously believed that they were not permitted to consider the inequity of the vast disparity between penalties for crack and cocaine offenses in determining an appropriate sentence. Now, that disparity is a permitted consideration. The Second Circuit has recently noted that <u>Kimbrough</u> confirms

> the broad deference that this Circuit has afforded the sentencing discretion of the district courts. However, until <u>Kimbrough</u> and <u>Gall</u>, this Circuit tended to discourage district courts from deviating from the crack cocaine Guidelines. Our opinion in <u>United States v. Castillo</u>, 460 F.3d 337 (2d Cir. 2006), may have been over-read or misread to inhibit any deviation. District courts may also have been inhibited from exercising their full discretion by the fact that the Sentencing Commission borrowed the 100-to-1 Guidelines ratio from the mandatory minimums for drug offenses decreed by Congress. <u>Id.</u> at 567 (explaining origin of Guidelines crack to powder ratio). Therefore, when a district court sentenced a defendant for a crack cocaine offense before <u>Kimbrough</u>, there was an unacceptable likelihood of error; certainly, the court acted under the influence of a widespread assumption that is now known to be erroneous.

<u>United States v. Regalado</u>, 518 F.3d 143, 147 (2d Cir. 2008). The Second Circuit went on to give specific instructions to district courts faced with a resentencing pursuant to the crack amendments:

> In deciding whether to modify the sentence, district courts must consider the factors set forth in 18 U.S.C. § 3553(a) anew and in light of <u>Gall</u> and <u>Kimbrough</u> to the extent that they may be applicable, and relevant Sentencing Commission policy statements. <u>See</u> 18 U.S.C. § 3582(c)(2).

<u>Id.</u> at 151. In other words, this Court may not have been aware, at the time Mr. Cox was sentenced in 2001, of the full scope of its authority to consider the disparity between crack and powder sentences, and thus, it may take that factor into account now.

The effect of the disparity in this case is dramatic.

Mr. Cox was convicted of an offense involving 2077 grams of crack. That quantity led to a base offense level of 38, which has now been reduced to 36. **The Guidelines range applicable to the base offense here has thus been reduced from 324-405 months to 262-327 months.** Furthermore, had the 2077 grams of cocaine been in powder rather than crack form, the base offense level would have been 28. At that offense level, and CHC IV, the Guidelines range applicable to Mr. Cox would have been 110 to 137 months. Even with a 4-level enhancement for role in the offense, **the Guidelines range applicable to Mr. Cox would have been 168 to 210 months** – about half the range that applied to his crack offense. We now know that this disparity is unfair and without legal foundation. More importantly, the Supreme Court has now counseled that District Courts are no longer required "to adhere to the 100-to-1 ratio for crack cocaine quantities other than those that trigger the statutory mandatory minimum sentences." Kimbrough, 128 S. Ct. at 572. As Justice Scalia put it, "the district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." Id. at 577 (Scalia, J., concurring).

The Second Circuit has declared that district courts considering a resentencing pursuant to the crack amendments "**must** consider the factors set forth in 18 U.S.C. § 3553(a) anew **and in light of Gall and Kimbrough**[.]" Regalado, 518 F.3d at 151 (emphases added). The defendant respectfully urges the Court to acknowledge its power to impose a sentence outside the Guidelines range, and its discretion to impose a reduced sentence in light of any disagreement it may have with the crack-powder disparity inherent in the Guidelines. The defendant respectfully requests that the Court exercise that discretion to reduce his sentence.

## CONCLUSION

The Western District of Virginia, in holding that a defendant should receive a reduction

in his sentence, summarized the core basis for its decision succinctly and eloquently:

> This defendant, like 19,500 similarly situated inmates across the nation, is not the undeserving recipient of blind fortune. His sentence is being reduced because in the judgment of the Commission, the judiciary, Congress, and much of America – with whom I heartily concur – his original sentence was unfairly harsh when compared to sentences given to defendants for powder cocaine offenses. In truth, his reduced sentence continues to reflect the disparity between the punishments for powder cocaine and crack cocaine offenses, but it is a step in the right direction.

United States v. Ayala, 540 F. Supp. 2d 676, 680 (W.D. Va. 2008).

For the reasons set forth above, the defendant, Clinton Cox, respectfully urges the Court to grant his motion and resentence him in accordance with Booker, Kimbrough, and Regalado. The defendant requests that the Court impose a reduced sentence that takes into account the changes in the law that have occurred since 2001 and, specifically, the disparity between the Guidelines range applicable to his crack offense – 360 months to life – and the range that would have applied to the same offense involving powder – 168 to 210 months.

                                          Respectfully submitted,

                                          The Defendant,
                                          Clinton Cox

                                          Thomas G. Dennis
                                          Federal Defender

Dated: June 24, 2008                    _____/s/_____
                                          Sarah A. L. Merriam
                                          Assistant Federal Defender
                                          265 Church Street, Suite 702
                                          New Haven, CT   06510
                                          Bar No. ct25379
                                          Phone: 203-498-4200
                                          Fax: 203-498-4207
                                          Email: sarah_merriam@fd.org

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on June 24, 2008, a copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                             /s/
                                         Sarah A. L. Merriam